# First Seneca Bank v. Sunseri

C.P. of Allegheny County, nos. GD 90-363 and GD 90-366.

*Reed J. Davis* and *Michael J. Hudock,* for plaintiff.
*Gusty A.E. Sunseri,* pro se.

FRIEDMAN, *J.,* April 13, 1995—

## INTRODUCTION

This case turns on 42 Pa.C.S. §8104, which provides that a judgment debtor may recover liquidated damages from a judgment creditor who fails, after a written request, to satisfy a judgment. That statute provides as follows:

"Section 8104. Duty of judgment creditor to enter satisfaction.

"(a) General rule.—A judgment creditor who has received satisfaction of any judgment in any tribunal of this Commonwealth shall, at the written request of the judgment debtor, or of anyone interested therein, and tender of the fee for entry of satisfaction, enter satisfaction in the office of the clerk of the court where such judgment is outstanding, which satisfaction shall forever discharge the judgment.

"(b) Liquidated damages.—A judgment creditor who shall fail or refuse for more than 30 days after written notice in the manner prescribed by general rules to comply with a request pursuant to subsection (a) shall pay to the judgment debtor as liquidated damages 1 percent of the original amount of the judgment for each day of delinquency beyond such 30 days, but not less than $250 nor more than 50 percent of the original amount of the judgment. Such liquidated damages shall be recoverable pursuant to general rules, by supplementary proceedings in the matter in which the judgment was entered."

## PROCEDURAL HISTORY

This phase of the case began on March 29, 1994, when defendants obtained a rule upon plaintiff to show cause why each defendant should not be paid liquidated damages under 42 Pa.C.S. §8104. After this second

set of proceedings under Rule 209 generated by the said petition of March 29, 1994, this court ruled, on January 17, 1995, that under *Marston v. Tryon,* 108 Pa. 270 (1885), defendants had to make demand upon plaintiff itself and not its attorney and therefore refused to award defendants liquidated damages. The court further indicated that were it not for *Marston* it would award such damages. On January 30, 1995, this court granted defendants' motion for reconsideration, vacated its order of January 17, 1995, and set an argument date of February 16, 1995. The argument was postponed and was held on February 21, 1995. On that date, attorneys for both sides agreed *Marston* was overruled by *First National Consumer Discount Co. v. Fetherman,* 515 Pa. 85, 527 A.2d 100 (1987). The court then granted plaintiff's request that it revisit other matters, directed plaintiff to file its own motion for reconsideration, and set argument on plaintiff's motion for March 15, 1995. It was contemplated that the court would then formally rule on both motions for reconsideration at once.

## FACTUAL BACKGROUND

The procedural history of the cases is somewhat tangled and will not be restated in full here. The facts material to a decision of the issues raised by the motions are as follows:

June 2, 1987—Defendants and plaintiff entered into an equipment lease for restaurant equipment, to begin June 2, 1987 and to run through June 1, 1992.

January 5, 1990—Plaintiff, alleging a default in the lease, caused entry of judgments by confession against each defendant each in the accelerated amount of $55,974.85.

December 30, 1992—It appears that, pursuant to those confessed judgments, the equipment in question was sold, perhaps at varying times, although the court may have misunderstood the representations as to this point. It is undisputed that on December 30, 1992, there was a sale of all the equipment not previously sold. It is also undisputed that the outstanding debt on December 30, 1992, was $7,238.19 and that the proceeds of the sale were $8,000.

February 26, 1993—Defendants obtained a rule upon plaintiff to show cause why the judgments entered by confession should not be marked satisfied.

March 18, 1993—The attorney for defendants sent a letter to plaintiff's attorney demanding that plaintiff mark the judgments satisfied.

April 9, 1993— Plaintiff refused, through its attorney, to do so and sent defendants a letter to this effect.

April 12, 1993—Defendants claim to have again demanded in writing that the judgments be satisfied. Plaintiff denies ever having received this letter and defendants cannot now find the check, cancelled or not, which they believe they mailed along with the letter. Therefore, the court assumes no second demand was made.

January 5, 1994—After proceedings under Rule 209, generated by defendants' petition filed February 26, 1993, this court ruled that defendants' debt to plaintiff plus costs and attorney's fees had been satisfied by the December 1992 equipment sale and entered an order directing plaintiff to have the docket marked accordingly. A memorandum in support of order accompanied this order.

January 27, 1994—Plaintiff marked the docket satisfied and did not appeal the order of January 5, 1994.

## ISSUES RAISED BY BOTH
## MOTIONS FOR RECONSIDERATION

(1) Has *Marston* been overruled by *Fetherman* so that demand for satisfaction made to an attorney rather than the client complies with the Act?

(2) Did the court err in refusing to allow plaintiff's use of "depositions by written interrogatories" (addressed to plaintiff's own attorney and plaintiff's own employee) as a means of taking evidence under Rule 209 proceedings?

(3) Did defendants' letter of March 18, 1993 comply with the requirements of the Act?

(4) Did plaintiff have any bona fide reason for refusing to satisfy the instant judgments between March 18, 1993 (defendants' first demand) and January 27, 1994 (date of satisfaction)?

### DISCUSSION

### 1. *Marston Has Been Overruled by Fetherman and a Demand for Satisfaction of a Judgment is Properly Made Upon the Attorney for the Judgment Creditor and Need Not Have Been Made Upon the Client*

After a review of all the *Fetherman* opinions, *i.e.* those filed by the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court, it was apparent to all, the court and the attorneys for the parties, that *Marston* was indeed no longer good law. *Marston* had held that the written demand for satisfaction of a judgment had to be sent directly to the judgment creditor and not to the attorney for the judgment creditor. In *Fetherman,* the Supreme Court without mentioning the *Marston* case by name, overruled its holding. The

opinion overwhelmingly suggests that the Supreme Court agrees with the portion of that trial court's opinion quoted below, which explains why *Marston* is no longer applicable given the subsequently written Pa.R.C.P. 233:

"Respondent's argument that the request was not properly made because it was served upon counsel rather than upon the party to whom it was addressed is simply without merit. The lone case relied upon for this point is *Marston v. Tryon,* 108 Pa. 270 (1885). In the century that has elapsed since this decision was rendered, the Supreme Court has promulgated Rules of Civil Procedure that govern the service of legal papers. Pa.R.C.P. 233, which is incorporated in section 8104 by language requiring 'written notice in the matter prescribed by general rules . . . ,' states that:

" '(a) All legal papers, . . . including notices . . . shall be served by leaving a copy for or mailing a copy to him at the address of the party or his attorney of record endorsed on an appearance on prior pleading of the party . . . .' Clearly, petitioners' letter of September 19, 1978 satisfies the mandate of this rule." *First National Consumer Discount Co. v. Fetherman,* 43 D.&C.3d 9, 18 (1983), *affirmed in part and reversed in part,* 338 Pa. Super. 323, 487 A.2d 987 (1985), *affirming in part and reinstating order of Court of Common Pleas,* 515 Pa. 85, 527 A.2d 100 (1987).

> *2. Rule 209 Procedure and Local Custom in the Allegheny County Court of Common Pleas Do Not Contemplate the Use of Interrogatories in Lieu of the Taking of Deposition*

Plaintiff first complains that the court erred in refusing to consider answers contained in its "deposition by written interrogatories," which were submitted by plain-

tiff to plaintiff's own attorney and plaintiff's own employee. Plaintiff's assertion of error is without merit.

When defendants filed their petition for liquidated damages under 42 Pa.C.S. §8104, the court, by order dated March 29, 1994, directed the parties to proceed in accordance with Rule 209. Plaintiff filed its brief in opposition to the rule to show cause on August 31, 1994, and defendants took the deposition of Gusty A.E. Sunseri on or about May 19, 1994. Plaintiff's attorney was present at this deposition. Plaintiff then filed what it calls "depositions by written interrogatories" (exhibits G and H to plaintiff's motion for reconsideration). These interrogatories were questions directed to one of plaintiff's attorneys and to one of plaintiff's employees by another of plaintiff's attorneys.

The use of the interrogatory form suggests that these "witnesses" are answering interrogatories posed by a party unrelated to them. In fact, the "witnesses" are the attorney for the party posing the interrogatories (the plaintiff) and an employee of the same party. At best, the interrogatories are in the nature of affidavits.

As affidavits, they do not fulfill the Rule 209 provision of an "out-of-court" evidentiary hearing via depositions. They were properly disregarded.

### 3. Defendants' Demand of March 18, 1993 Sufficiently Complies With the Requirements of the Act and Was Understood by Both Sides to Refer to Both Judgments

#### (a) A Proper Request Was Made

Plaintiff first asserts, quite disingenuously, that defendants' demand was unclear because there were four judgments that the March 18, 1993 letter could have

referred to, the instant ones plus two others against other defendants named Lombardo and D'Achille.

However, by plaintiff's attorney's own letter of April 9, 1993, attached as exhibit F to plaintiff's own motion for reconsideration, it is clear that plaintiff's attorney knew very well which judgments were meant. The caption of that letter refers to GD 90-00363, one of the instant cases. The body of the letter does not complain that plaintiff does not understand which case or cases defendants mean nor does it complain that the allegedly correct amount of costs and filing fees required to satisfy the judgment at GD 90-00363 had not been sent. Rather plaintiff claimed that it would not satisfy the docket because the amount of $7,238.19 was still owed on "the judgment entered in this matter." Also, since plaintiff entered two identical judgments, not one, "in this matter," one against the debtor and one against the guarantor for the *same* debt, it is clear that the plaintiff could properly only collect on one or the other. When either judgment was paid, both would be satisfied. It is therefore understandable and of technical significance only, that plaintiff and defendants occasionally referred to both judgments in the singular.

Plaintiff's sole basis for not satisfying the judgments was as stated in its April 9, 1993 letter: plaintiff insisted it was still owed over $7,000 more on the judgment amount.

This refusal by plaintiff led to the first set of petition and answer proceedings which resulted in the order of this court dated January 5, 1994. By that order, the court, having found that plaintiff's April 9, 1993 position was incorrect, ruled that defendants' debt to plaintiff plus associated costs and attorney's fees had been satisfied by the December 30, 1992 sale of the restaurant equipment. The order of January 5, 1994 further directed

plaintiff to have the confessed judgments in both cases marked satisfied. Plaintiff did not appeal this order. The memorandum in support of order which accompanied that order therefore states the law of this case.

### 4. *Plaintiff Had No Bona Fide Basis for Its Refusal to Satisfy the Judgments Prior to the Order of Court Dated January 5, 1994*

The court perceives the central question arising from plaintiff's motion for reconsideration regarding the defendants' demand for liquidated damages as being whether or not plaintiff had a bona fide reason in law not to mark satisfied the record of its judgments against defendant Pizza Roma (the debtor) and against defendant Sunseri (the guarantor). A bona fide reason would not necessarily be one that would prevail, rather it is a reason that has some underlying rationale and merit based on law, even though eventually ruled to be incorrect. In the instant case, plaintiff based its refusal to satisfy the judgments on an extremely contorted and unreasonable reading of the lease agreement and the law applicable thereto.

The lease agreement, in paragraph 13(c), called for the proceeds of any sale of the equipment to be applied to the balance due on the lease. Instead of doing this, plaintiff sold the equipment at the private sale on December 30, 1992 and kept all the proceeds without applying any credit to defendants' debt balance. Plaintiff's theory was that it was first entitled to an amount equal to what the plaintiff "had calculated they [sic] would receive on a residual sale of the equipment." (Davis deposition, taken on May 26, 1993 pursuant to the first rule issued, at page 49, lines 19-20.) However, there is no such provision in the lease upon which plaintiff's claims are based. This court therefore con-

cluded, well over a year ago, that the proceeds of the December 30, 1992 sale ($8,000) should first be applied to the remainder due on the lease of $5,805.95. The balance of $2,194.05 was to be applied to reasonable counsel fees and costs with plaintiff itself getting any excess. That order was final, was not appealed, and the memorandum in support thereof is a statement of the law of this case.[1] The memorandum issued by this court at the time indicates that the reason proffered was far from bona fide.

As of its letter dated April 9, 1993, plaintiff claimed that defendants still owed it slightly more than $7,000, despite the fact that the equipment in question had been sold at a private sale on December 30, 1992 for $8,000. (See plaintiff's motion for reconsideration of order of court, Strassburger, J., dated April 30, 1993, paragraph 3.) In oral argument before this court, prior to the January 5, 1994 order, plaintiff explained that it felt it was entitled to that $8,000 because the lease was a "true" lease and therefore plaintiff had an expectation of receiving some "residual value" in the equipment after the term of the lease was over.

The doctrine of equitable estoppel requires that this explanation to this court be deemed the actual reason plaintiff had at the time it refused to satisfy the judgments. The court points this out because a review of the court papers suggests that other explanations and

---

1. The court was never asked to determine, as between plaintiff and plaintiff's attorney, what amount of counsel fees would be "reasonable," and what amount of the proceeds should be delivered by plaintiff's attorney to his client. Further discussion of the fee issue between plaintiff and its counsel is therefore unnecessary and irrelevant to the decision of whether or not plaintiff should have satisfied its judgments against defendants, if not immediately after the sale, at least upon receiving defendants' demand on March 18, 1993.

justifications may have been given to other judges. For example, in paragraph 4 of its motion to reconsider directed at Judge Strassburger's order of April 30, 1993, plaintiff claims the December 30, 1992 sale proceeds of $8,000 were to be "applied to reimburse plaintiff for all costs and expenses incurred by plaintiff in the retaking, preparing for sale, and conducting of the sale of the equipment" "[p]ursuant to the terms of the two equipment leases."

In addition, on pages 17-18 of plaintiff's "brief in opposition to rule to show cause scheduled for argument of September 9, 1993," plaintiff cites its own attorney's deposition testimony as follows:

"As Attorney Davis explained in his uncontroverted deposition testimony:

'[The recoupment of the residual value from the proceeds from the sale of the equipment in question] is part of the loss incurred by the bank because of the breach. You can't say 'we own their equipment, but we're going to sell our equipment to pay your debt,' and that's in essence what you are saying and it doesn't work that way. They first pay off all amounts to which they are entitled to receive, and that includes what they have calculated to be the value of the equipment on resale. Just as if you lease a car and you have a residual amount there, you anticipate receiving that amount. You've got to pay sales tax on the amount. And that's what happened to the sum of $8,000. There was nothing applied to the [lease payment arrearages, attorney's fees, costs and expenses arising out of the defendant's/petitioner's default.]" (Davis Deposition Tr. p. 50, Ll. 15-25; p. 51, Ll. 2-5.)

Plaintiff's brief then goes on to say:

"The plain language of paragraph 13(c) of both equipment leases makes it clear that plaintiff/respondent is

entitled to recoup and be reimbursed from the proceeds from the sale of the retaken equipment for all costs and expenses incurred by the plaintiff/respondent as a result of the defendant's/petitioner's breach. The loss of the residual value is one such cost or expense incurred."

Only now, when the handwriting is on the wall (via the order of January 17, 1995, and the conclusions reached at oral argument on February 21, 1995) does plaintiff say that the real reasons it did not have to satisfy the docket in March or April of 1993 are that defendants did not mail a check for the costs and that plaintiff was unsure what judgment defendants meant. That justification is too little, too late.

### 4. *Each Defendant is Entitled to the Maximum Amount of the Liquidated Damages Allowed by the Act*

Plaintiff confessed judgments in separate actions against both the debtor (Pizza Roma) and its guarantor (Sunseri). Plaintiff's attorney refused to satisfy either judgment of record on the theory that plaintiff had not been paid the full amount of the debt.

In the letter from plaintiff's attorney to defendants' attorney dated April 9, 1993, plaintiff indicated *only* one reason for refusing to satisfy the two judgments of $64,371.08 each ($55,974.85 plus attorney's commission of 15 percent or $8,396.23). The stated reason was "that the sum of $7,238.19 remain[ed] outstanding and due and owing on the judgment entered in this matter."

Despite proper demand made, each defendant has had outstanding against them a judgment that was paid in full, including all fees and costs.

The Act is designed to prevent such a result by punishing judgment creditors who, though paid in full, refuse to cause the docket to be marked satisfied.

## CONCLUSION

In January 1990, plaintiff was owed roughly $55,000 by defendant Pizza Roma on the equipment lease itself when it entered the two judgments by confession against Pizza Roma and against the guarantor, Mr. Sunseri, for over $64,000 each.

Despite having received payment in full of the balance of the debt plus attorney's fees and costs by December 30, 1992, plaintiff refused to satisfy the judgments. Defendants obtained a rule upon plaintiff on February 26, 1993, to show cause why the judgments entered by confession should not be marked satisfied. In addition, defendants made a letter demand that the judgments be satisfied on March 18, 1993. Plaintiff continued its refusal, asserting a reason subsequently found to have been without merit. The reason is frivolous in the extreme. Only after the unfavorable ruling of January 5, 1994 did plaintiff satisfy the judgments in question. The conduct of plaintiff is one of the worst examples of the conduct the Act was designed to prevent. The maximum amount of liquidated damages, *i.e.,* 50 percent of the original amount of the judgment, must be awarded to each defendant.

## ORDER

And now, to wit, April 13, 1995, upon consideration of defendants' and plaintiff's motions for reconsidera-

tion of the court's order of January 17, 1995, previously vacated by order dated January 30, 1995, it is hereby ordered that liquidated damages pursuant to 42 Pa.C.S. §8104 are awarded to Gusty A.E. Sunseri in the amount of $32,185.54, and to Pizza Roma Franchise Inc. in the additional amount of $32,185.54.